AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Dakota

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No.   5:19- MJ- 150 |
| INFORMATION ASSOCIATED WITH THE FOLLOWING SNAPCHAT ACCOUNT: Essmarie023 | ) ) |
| THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ South Dakota _____
*(identify the person or describe the property to be searched and give its location)*:

INFORMATION ASSOCIATED WITH THE FOLLOWING SNAPCHAT ACCOUNT: Essmarie023

THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crimes of Kidnapping, in violation of 18 U.S.C. §§ 1201(a)(2), 1153, and 2, Aggravated Sexual Abuse by Force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), 1153, and 2, Aggravated Sexual Abuse by Force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(B), 1153, and 2, Interstate Domestic Violence, in violation of 18 U.S.C. §§ 2261(a)(2) and 2, Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), 1153, and 2, and Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C. §§ 113(a)(8), 1153, and 2, as outline in the affidavit in support of the search warrant, which is incorporated herein by this reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before *December 30, 2019* *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Daneta Wollmann _____ .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*  ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:   *12-16-19   2:45 pm*                    *Judge's signature*

City and state:     Rapid City, SD                         Daneta Wollmann, U.S. Magistrate Judge
                                                            *Printed name and title*

CC: AUSA Sazama and agent Kle

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>5:19- MJ- 150 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Dakota

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* INFORMATION ASSOCIATED WITH THE FOLLOWING SNAPCHAT ACCOUNT: Essmarie023 THAT IS STORED AT PREMISES CONTROLLED BY SNAPCHAT | )  )  )  )  )  )  ) Case No. 5:19-MJ-150 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachments A and B

located in the _____ District of ____South Dakota____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments A and B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| | |
|---|---|
| 18 U.S.C. §§ 1201(a)(2), 1153, and 2 | Kidnapping |
| 18 U.S.C. §§ 2241(a)(1), 2246(2)(A)(B, 1153, and 2 | Aggravated Sexual Abuse by Force |
| 18 U.S.C. §§ 2261(a)(2) and 2 | Interstate Domestic Violence |
| 18 U.S.C. §§ 113(a)(6), 1153, and 2 | Assault Resulting in Serious Bodily Injury |
| 18 U.S.C. §§ 113(a)(8), 1153, and 2 | Assault by Strangulation of a Dating Partner |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Stephen Beery
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **12-16-19**

_____
*Judge's signature*

City and state:  Rapid City, SD

Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
FOLLOWING SNAPCHAT ACCOUNT:
Essmarie023

THAT IS STORED AT PREMISES CONTROLLED
BY SNAPCHAT

5:19- MJ- 150

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

State of South Dakota   )
                        ) ss
County of Pennington    )

I, Stephen Beery, being duly sworn, state as follows:

1.      I am an investigative or law enforcement officer of the United States
within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct
investigations of and make arrests for federal crimes occurring within Indian
country, including but not limited to Kidnapping, in violation of 18 U.S.C. §§
1201(a)(2), 1153, and 2, Aggravated Sexual Abuse by Force, in violation of 18
U.S.C. §§ 2241(a)(1), 2246(2)(A), 1153, and 2, Aggravated Sexual Abuse by Force,
in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(B), 1153, and 2, Interstate
Domestic Violence, in violation of 18 U.S.C. §§ 2261(a)(2) and 2, Assault
Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), 1153,
and 2, and Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C.
§§ 113(a)(8), 1153, and 2.

2.     I have been a Special Agent with the FBI since May, 2016.  I am currently assigned to the Rapid City Resident Agency of the Minneapolis Field Division, which is located in the District of South Dakota.  While employed by the FBI, I have participated in numerous investigations in which I have collected evidence in electronic form.

3.     The information set forth below is based upon my knowledge of an investigation conducted by the FBI as well as local and tribal law enforcement agents and officers.  I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary probable cause for the issuance of this search warrant.

4.     I make this affidavit in support of an application for a search warrant for information associated with a certain Snapchat user that is stored at premises owned, maintained, controlled, or operated by Snapchat, a social networking company headquartered in Venice, California.  The information to be seized and searched is described in the following paragraphs and in Attachments A and B.

5.     This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a); 18 U.S.C. § 2703(b)(1)(A); and 18 U.S.C. § 2703(c)(1)(A), using the procedures described in Federal Rule of Criminal Procedure 41, to require Snapchat to disclose to the government records and

other information in its possession, pertaining to the subscriber or customer associated with a particular Snapchat user ID.

6.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. § 1201(a)(2); 18 U.S.C. §§ 2241(a)(1); 18 U.S.C. §§ 113; and 18 U.S.C. § 113(a)(8), may be present in the following Snapchat account: **"essmarie023."** There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.

## PROBABLE CAUSE

7.     On or about July 14, 2019, Esther Wolfe was reported missing to the Rapid City Police Department ("RCPD") by her friend, Victoria Habben. Ms. Habben reported Esther Wolfe was last seen at the Hilton Garden Inn, Esther's place of employment, on July 13, 2019.  Ms. Habben informed RCPD she had concerns due to her knowledge that Esther was previously the victim of domestic violence in her relationship with Jesse Sierra.

8.     Your affiant began assisting law enforcement efforts to recover the victim.  Your affiant is aware that the victim, Esther Wolfe, and the suspect, Jesse Sierra, shared an intimate dating relationship in which Esther previously suffered domestic abuse at Jesse Sierra's hand.

9.     Efforts by RCPD included interviews of Esther Wolfe's friends, who advised Rapid City Police Detectives that Esther Wolfe was aware Jesse Sierra

was being released from jail in Colorado and that she was afraid of Jesse Sierra's return.

10.    Your affiant is aware that on July 16, 2019, RCPD received a call from an individual who identified himself as Michael Sierra.  This individual indicated he heard Esther had been seen with Jesse Sierra in the previous week. He denied personally seeing the two. He also said he lives in Oglala, South Dakota, and said law enforcement had already been to his residence searching for Esther.  Upon further investigation, RCPD believes this call actually came from Dustin Sierra, the brother of Jesse Sierra, who lives in Oglala, South Dakota, near Michael Sierra, Sr.  The number "Michael Sierra" provided is the same number which Michael Sierra, Jr., another brother of Jesse Sierra, provided to police on July 18, 2019, as the contact information to reach Dustin Sierra.

11.    On July 17, 2019, RCPD received a phone call from Esther who stated she was en route to Chadron, Nebraska, with her fiancée.  She denied being in danger.  That call was placed from a phone number belonging to Louella Youngman, Jesse Sierra's and Dustin Sierra's mother.

12.    On July 18, 2019, RCPD Sergeant Chris Hunt called the phone number Esther used the previous day and spoke with Louella Youngman.  Ms. Youngman confirmed Jesse Sierra and Esther Wolfe had been at her property, but said they left for Chadron, Nebraska, with an unknown individual in an unknown vehicle.

13.     On July 18, 2019, RCPD made contact with Eugene Giago, who advised he received a Snapchat message on July 16, 2019, from Esther's Snapchat account. The message read, "no, I'm good." Giago advised he did not believe this message was from Esther.

14.     On July 18, 2019, at approximately 1333 hours, RCPD Media Specialist Brendyn Medina sent a message to Esther's Snapchat account, requesting contact with Esther.

15.     On July 18, 2019, RCPD made contact with Michael Sierra, Jr. Michael Sierra, Jr., denied Jesse Sierra and Esther visited his home in Chadron, Nebraska. Michael Sierra, Jr., advised that the last person Jesse Sierra and Esther were with was Dustin Sierra. Dustin Sierra lives in Oglala, South Dakota, in the Lakeside Community.

16.     Esther remained unaccounted for from July 13, 2019, until she was recovered at an emergency room in Chadron, Nebraska, on July 21, 2019. She presented to the hospital with severe bruising to her face and body. She suffered broken ribs and a fracture to her mandible. Both Esther's eyes were swollen, and her sclera were bright red and inflamed. She had significant bruising and redness to her neck and collar. Esther left the hospital on July 21, 2019, with instructions to care for her injuries. Prior to her release, she submitted herself to a Sexual Assault Nurse Examination (SANE).

17.     On July 22, 2019, law enforcement interviewed Esther regarding her injuries. Esther advised that she first saw Jesse Sierra on July 13, 2019. She advised Jesse came to the Hilton Garden Inn during her work shift. She did not

want to be with him, but he persisted in asking when she would be free from work. Esther said Jesse Sierra exposed his penis to her and told her, "You know you want this." Esther said Jesse told her he would not leave without her.

18. Jesse Sierra convinced Esther that he merely wanted to share a meal with her. She conceded and agreed to eat with him at the Golden Corral restaurant in Rapid City. She advised after their meal, they went to the 24/7 Program in Rapid City. Esther advised that at the 24/7 Program, she began walking. Jesse Sierra offered to give her a ride with his brother, Dustin Sierra, from the 24/7 Program to the destination she presumed they were headed: back to her workplace.

19. As Dustin Sierra drove, he headed in a direction away from Esther's anticipated destination. Esther asked Jesse Sierra where they were going. Jesse Sierra placed his arm around her throat and told her they were going to the reservation. She attempted to open the door and exit the vehicle, but Jesse Sierra had his hand around her throat preventing her flight.

20. Jesse Sierra strangled Esther to unconsciousness. He continued strangling her every time she regained consciousness until they arrived to the Pine Ridge Reservation.

21. Esther advised that it was difficult to remember in exactly what order the sequence of events from the preceding days occurred.

22. Esther said she was initially taken to Dustin Sierra's residence in Oglala. That night, Jesse Sierra forcibly sexually assaulted Esther. She advised Jesse Sierra struck her in the face and kicked her multiple times. She lost

consciousness multiple times through the evening and lost control of her bladder twice in the bed where she was being held. She believes she heard Jesse and Dustin Sierra discuss that law enforcement was next door, but Esther did not see police officers.

23. At some point, Jesse Sierra transported Esther to Mike Sierra, Sr.'s, residence. Esther Wolfe described a camper on Mike Sierra, Sr.'s, property. She advised that Jesse Sierra took her to this camper and held her captive there. In the camper located on Mike Sierra, Sr.'s, property, Jesse Sierra began assaulting Esther to the point that both her eyes were swollen shut. Jesse Sierra also sexually assaulted Esther in the camper.

24. Esther believed that at some point after leaving Dustin Sierra's residence, Jesse Sierra brought her to a blue abandoned house near Louella Youngman's residence. Esther indicated that Louella Youngman had seen her and knew where she was. Esther said she had her niece's phone at this abandoned residence. She put her niece's cell phone in a trash bag in the abandoned house. Esther described the phone as a black Android phone with an Apple sticker on the back.

25. The cellular phone was later recovered in the blue house on Louella Youngman's property, in the location Esther described it would be found.

26. Your affiant noted Esther Wolfe's Snapchat account name during a forensic examination and download of Esther's phone.

27. Esther confirmed the call she made to police on July 17, 2019, was placed from Louella Youngman's phone. She advised Dustin Sierra picked them

up from Louella Youngman's residence and took her and Jesse Sierra to Chadron, Nebraska. Jesse Sierra took her to his brother, Michael Sierra, Jr.'s, residence.

28.     Jesse Sierra next took Esther to Crawford, Nebraska, where an individual named "Franklin" got them a motel room. Michael Sierra, Jr., dropped off Jesse Sierra and Esther at the motel in Crawford. Jesse Sierra sexually assaulted Esther multiple times in the motel room. Esther said she did not try to fight him off anymore because it was "too hard."

29.     Esther advised that on July 21, 2019, Michael Sierra, Jr., and Jesse Sierra dropped her off at the Chadron hospital due to the extent of her injuries. Taila Sierra, Jesse Sierra's sister, allowed Esther to call Esther's family.

30.     Esther advised her Snapchat user name is "essmarie023." She denied personally contacting anyone via Snapchat during the time within which she was missing.

31.     Esther advised that Jesse Sierra was the author of messages sent to Tahney Habben, a relative, on her Facebook account. Esther could not confirm the identity of the sender of the Snapchat message to Eugene Giago. Considering the number of persons, including Jesse Sierra, claiming to be Esther Wolfe via Esther's social media accounts, your affiant believes there is probable cause to believe Jesse Sierra may also have accessed Esther's Snapchat account and pretended to be her.

32.     Based on the information received from Esther Wolfe and Eugene Giago, your affiant submitted a preservation request to Snapchat for the

Snapchat account with username "essmarie023." Snapchat confirmed it preserved the account for Snapchat user "essmarie023."

33.    Based on the foregoing, I submit there is probable cause to believe that evidence, contraband, or fruits of a crime may be found within the Snapchat account **"essmarie023."**   Such information is necessary to corroborate information provided by Esther Wolfe regarding the details and events of the period from July 13, 2017, to July 21, 2019.  I therefore request a search warrant be issued authorizing the search and seizure of the records and other information (including the content of communications) described in Attachment A.

## INFORMATION ON SNAPCHAT

34.    Based on my training and experience and what I have learned through other sources, I know the following:

a.    Snapchat, Inc. is headquartered at 63 Market Street, Venice, California.

b.    Snapchat is a messaging application whereby users can take photos or records videos and send them to recipients.  These messages are known as "Snaps."  The following additional information regarding Snapchat is from a Snapchat, Inc. document entitled, "Snapchat Law Enforcement Guide", which indicates it was last updated in June, 2017:

Snaps: A user takes a photo or video using their camera phone in real-time.  The user then selects a time limit of 1-10 seconds for the receiver to view the photo or video.  A user can elect to have the photo/video saved in their phone's photo

gallery or just sent via Snapchat, without being saved.  The photo/video can then be sent to a friend in Snapchat.

Stories:  A user can also add the photo/video Snap to their "Story".  Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours.

Chat:  A user can also type messages to friends within the Snapchat app using the Chat feature.  A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared.  Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message (text or photo) that he or she wants to keep.  The user can clear the message by tapping it again.

Memories:  Memories is Snapchat's cloud-storage service.  Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories.  A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

35.    If there are snaps that have not been viewed, the content of the snap is still retained until the intended party has viewed the snap.  I have also been advised by a representative of Snapchat, that there is the possibility of some Snapchat information may be able to provide geolocation data, recorded when the user uploads items to Snapchat.

36.    In addition to photos, videos, "Snaps" and stories, "Snapcash" is an online money transfer service offered by Snapchat.   The actual business platform is run by "SquareUp", the distributor of a mobile credit card reader and application Square Register.   Snapcash can be used to transfer money between Snapchat users using a linked, U.S. issued Visa or MasterCard debit card only; using credit cards is not permitted.  Snapcash can only be sent to other users who have a linked debit card.  Snapcash has a $250 weekly limit

but can be upgraded to a $2,500 weekly limit.   Users who upgrade have to provide their full name, date of birth, and Social Security number.

37.   While a Snapchat message may disappear, the record of who sent it and when still exists.  Snapchat records and retains information that is roughly analogous to the call detail records maintained by telecommunications companies.  This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

38.   Snapchat asks users to provide basic contact and personal identifying information to include date of birth.  When a user creates an account they make a unique Snapchat username.  This is the name visible to other Snapchat users.  An email address is required to register a Snapchat account and a new user must also provide a mobile phone number.  This phone number is verified during the registration process.  Snapchat sends an activation code, which must be entered before proceeding with the registration step.  However, a user may elect to bypass entering a phone number so one may not always be present in the user's account.  Snapchat also retains the account creation date.

39.   Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC)

address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat. In the event the Snapchat user's application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

## INFORMATION TO BE SEARCHED
## AND THINGS TO BE SEIZED

40. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), and using the procedures described in Federal Rule of Criminal Procedure 41, by using the warrant to require Snapchat to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## REQUEST/JUSTIFICATION FOR
## ORDER OF NONDISCLOSURE

41. The United States respectfully applies for an order of nondisclosure to Snapchat under 18 U.S.C. § 2705(b) regarding the following account: "essmarie023." The United States is seeking this search warrant for user information, including all names, addresses, IP addresses, including historical, telephone numbers, other email addresses, information on length and types of services and any means of payment related to these accounts under the authority given by 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), using

the procedures described in Federal Rule of Criminal Procedure 41.  Based on §
2703(c)(3), the United States is not required to provide notice to the subscriber.
Under § 2705(b), the United States may apply to the court for an order
commanding Snapchat not to notify the subscriber of the existence of the search
warrant.  The court may decide what length of time shall apply to the order of
nondisclosure if the court determines the notification to the subscriber could
result in one of the five factors listed in the statute, which includes destruction
of or tampering with evidence.  18 U.S.C. § 2705(b)(3).  The basis for the request
is that such disclosure could cause any person with access to the accounts, or
any related account or account information, to tamper with or modify the content
or account information and thereby destroy or tamper with evidence and
otherwise seriously jeopardize the investigation.  Especially due to the ease of
access to Snapchat, its content can be modified by persons with internet access
and sufficient account information.  As such, the United States respectfully
requests this Court enter an order commanding Snapchat not to notify the user
of the existence of this warrant.

## REQUEST FOR SEALING

42.    I further request that the Court order that the matter be sealed until
further order of the Court.  The matter is an ongoing criminal investigation that
is neither public nor known to all of the targets of the investigation.  Accordingly,
there is good cause to seal the matter because premature disclosure may
seriously jeopardize the ongoing investigation.

## LIMIT ON SCOPE OF SEARCH

43.    I submit that if during the search, agents find evidence of crimes not set forth in this affidavit, another agent or I will seek a separate warrant.

## CONCLUSION

44.    Based on the forgoing, I request that the Court issue the proposed search warrant, which has been sought using the procedures described in Federal Rule of Criminal Procedure 41.

45.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

46.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.


Dated: 12/16/19

_____
Special Agent Stephen Beery
Federal Bureau of Investigation


SUBSCRIBED and SWORN to

_____ in my presence

_____ by reliable electronic means

this 16th day of December, 2019.

_____
DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Snapchat user IDs that are stored at premises owned, maintained, controlled, or operated by Snapchat, a company headquartered in Venice, California:

- User Name: **essmarie023**

## ATTACHMENT B

### Particular Things to be Seized

### I.   Information to be disclosed by Snapchat

To the extent that the information described in Attachment A is within the possession, custody, or control of Snapchat, including any messages, records, files, logs, or information that have been deleted but are still available to Snapchat, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snapchat is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All stored communications and other files in your possession (to include, if available, account access information, event histories including dates and times, connection dates, times and locations, connection IP information, message content, graphics files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communications to or from Snapchat Account **"essmarie023"**.

(b) All files that have been created and/or accessed via Snapchat Account **"essmarie023"**.

(c) The identifiers and all available information for any other email account(s) associated with Snapchat Account **"essmarie023"**.

(d) All connection logs and records of user message activity, including;

1) Transmitter/Sender identifier (i.e. addresses and/or IP address);

2) Connection date and time;

3) Method of connection (telnet, ftp, http);

4) Data transfer volume;

5) User name associated with the connection and other connection information, including the Internet Protocol address of the source of the connection;

6) Other user accounts associated with, referenced in or accessed by Snapchat Account **"essmarie023".**

7) Address books, contact lists and "my friends," if available;

8) Records of files or system attributes accessed, modified, or added by the user.

(e) All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with Snapchat Account **"essmarie023"**, including, without limitation, subscriber names, user names, screen names or other identities, addresses, residential addresses, business addresses, and other contact information, telephone numbers or other subscriber number or identifier number, billing records, information about the length of service and the types of services the subscriber or customer utilized, and any other identifying information, whether such records or other evidence are in electronic or other form. Such records and other evidence include, without limitation,

correspondence and other records of contact by any person or entity about the above-referenced account, the content associated with or relating to postings, communications and any other activities to or through Snapchat Account **"essmarie023"** whether such records or other evidence are in electronic or other form.

(f)   All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2422(b), enticement of a minor using the internet, from December 1, 2018, to present, including, for each user IDs identified on Attachment A.

## III.    Information Regarding Search Warrant Compliance by Snapchat:

Snapchat shall disclose responsive data, if any, by sending to:

> Special Agent Stephen Beery
> Federal Bureau of Investigation
> 3600 Jet Drive
> Rapid City, SD  57703
> sbeery@fbi.gov
> (605) 355-5141

Snapchat shall use the United States Postal Service or another courier service to disclose the responsive data, notwithstanding 18 U.S.C. § 2252A or similar statute or code.

1

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
## PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11) & (13)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Snapchat, and my official title is _____. I am a custodian of records for Snapchat. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Snapchat, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of Snapchat; and

    c.    such records were made by Snapchat as a regular practice.

    I further state that this certification is intended to satisfy Rules 902(11) and (13) of the Federal Rules of Evidence.

_____    _____

Date                         Signature

2